UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIAM GREGORY, | ) |
| | ) |
| Petitioner, | ) Case No. 07-724 |
| Vs. | ) |
| | ) |
| VINCE BIANCO – WARDEN | ) |
| | ) |
| Respondent | ) |

**MEMORANDUM OF LAW IN SUPPORT OF AN APPLICATION FOR HABEAS CORPUS RELIEF PURSUANT TO TITLE 28 OF THE UNITED STATES CODE §2254, BY A PRISONER IN THE CUSTODY OF THE STATE OF DELAWARE**

**COMES NOW THE PETITIONER,** William Gregory, through his counsel, James Quincy Butler, Esq., and in support of his application for relief pursuant to Title 28, of the United States Code § 2254 hereby states as follows:

On May 27, 1999 the Grand Jury charged Mr. William Gregory and Nugi Nichols with Attempted First Degree Murder in violation of Title 11, Section 531 of the Delaware Code of 1974; Possession of Firearm During the Commission of a Felony in violation of Title 11, Section 1447 A of the Delaware Code of 1974; Conspiracy First Degree in violation of Title 11, Section 513 (1) of the Delaware Code of 1974; Assault Second Degree in violation of Title 11, Section 612 of the Delaware Code of 1974; Possession of Deadly Weapon During the Commission of a Felony in violation of Title 11, Section 1447 of the Delaware Code of 1974.

William Gregory pled "not guilty" to the charges in the indictment. William Gregory was represented on the trial level by Joe Hurley. On February 15, 2000 Mr. Gregory and the alleged co-conspirator proceeded to a jury trial. The trial was consolidated. At the conclusion of the proceedings, Mr. Gregory was found guilty of all 5 counts pertaining to him.

Mr. Gregory filed a timely appeal alleging various errors.

### STATEMENT OF THE FACTS AS ALLEGED BY THE GOVERNMENT

1. As Nicole Hansley was sleeping, William Gregory entered her bedroom and hit her in the head with a baseball bat.
2. Nicole Hansley awoke, and William Gregory demanded from her the return of property that he believed she had taken.
3. William Gregory hit her numerous times with the bat while demanding the return of the property.
4. After repeating that she was not responsible for the missing property, Gregory shot her in the head with a revolver that was provided by Mr. Nichols.
5. Despite the gunshot wound, Nicole Hansley was able to talk. She proclaimed that she knew nothing of the missing property.
6. Nichols then placed his gun against the side of Hansley's face and tried to fire, however the gun jammed.
7. William Gregory tried to determine why the gun had jammed. In doing so the gun discharged and grazed Hansley's face.
8. Nichols took the gun back and fired it at Hansley's neck.
9. Nicole Hansley survived the bullet wounds to the neck and face and later identified William Gregory and Nugi Nichols as the perpetrators.

The petitioner alleges that he was prejudiced at the trial level based upon errors of both trial counsel and the court during his case.

**Prejudicial Error Number: 1**

Jury instructions concerning "reasonable doubt" were misleading and impermissibly vague and therefore prejudicial.

**Prejudicial Error Number: 2**

Ineffective assistance of counsel regarding the failure by trial counsel to provide a legal defense that comports with 6th Amendment standards – specifically, failure by trial counsel to pursue glaring inconsistencies within the primary witness' statements concerning the weapons purportedly used by Mr. Gregory.

**Prejudicial Error Number: 3**

Ineffective assistance of counsel regarding the failure by trial counsel to provide a legal defense that comports with 6th Amendment standards – specifically, trial counsel's not allowing the defendant to testify in his own defense.

## Prejudicial Error Number 1 - Impermissibly Vague and Misleading Jury Instructions

Fundamental liberties guaranteed to Mr. Gregory by the United States Constitution were disregarded during his initial trial proceedings. The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Francis v. Franklin 471 U.S. 307, 105 S.Ct. 1965 (1985) (quoting In re Winship, 397 U.S., at 364, 90 S.Ct. at 1073 (1987)). A defendant can suffer a dispossession of his constitutional rights in many ways during the course of a criminal trial. One of the more inconspicuous avenues towards the aforementioned dispossession is through the jury instructions articulated prior to jury deliberation. See, e.g., Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450 (1979). "Whether a defendant has been

accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." Id at 514, 2454. In Sandstrom, the Supreme Court acknowledged the propriety in carefully instructing the jury so as not to force an abandonment of Constitutional guarantees. Petitioner David Sandstrom was charged with deliberate homicide. The prosecution requested that the judge instruct the jury that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts." Id at 513, 2453. Sandstrom's counsel, in arguing that his client did not "knowingly and purposely" commit the crime, objected that the instruction impermissibly shifted the burden of proof to establish intent away from the prosecution and to the defendant – an action which is inexcusable under our Constitutional framework. Id. In ruling for Sandstrom, the Honorable Justice Brennan accurately observed that any jury instruction that has the effect of relieving the State of their burden of proof is constitutionally deficient. Id at 521, 2458.

In the instant case, the court, during the jury instruction discussing "reasonable doubt," instructed the jury that "if, on the other hand, you think there is a real possibility or, in other words, a reasonable doubt that the defendant is not guilty, you must give the defendant the benefit of the doubt by finding the defendant not guilty." (Trial Transcript – pg. 130 [11-15]). The jury instruction had the effect of irreparably confusing the jury and ultimately took away from their consideration whether or not the prosecution proved guilt beyond a reasonable doubt.

Specifically, the instruction succeeded in conflating "guilt beyond a reasonable doubt," with "a **real** possibility as to innocence." The error, of course, being that the presumption of innocence is endemic to our Constitutional jurisprudence and is

undoubtedly the starting point of any jury deliberation into the extent of culpability of a criminal defendant. Instructing the jury that they must identify a "real possibility" as to the innocence of the defendant in order for the defendant to be adjudged "not guilty" truncates the burden of proof and persuasion from one where the consideration is whether or not the prosecution has cast a significant enough shadow of guilt upon a theretofore innocent party to one where the consideration is whether or not the defendant has done enough to move forward into, or in the alternative done enough to remain within, the indefinite parameters of legal "innocence."

One could make a remote argument that the instruction only elucidates the concept of "reasonable doubt" for those less familiar with the legal notion. However, a natural reading of the instruction appears to lessen the burden on the prosecution by requesting that the jury find a "real possibility of innocence" – an incongruent design considering the "innocence" that they were asked to identify should be presumed at the outset of deliberations. See, e.g., Sandstrom v. Montana, 442 U.S. 510.

Furthermore, one could make a protracted argument that other instructions provided by the court were more clear and transparent as to the burden of proof allocation (Trial Transcript pg. 129). However, the "burden of proof" concept was confused at the point where reasonable doubt was defined for the jurors. As well, that mention was the last stanza to an instruction entirely devoted to the "reasonable doubt" and "burden of persuasion" anatomy (Trial Transcript – pg. 129-130). As such, it was arguably the most memorable.

## Ineffective Assistance of Counsel

There is lengthy legal precedent that underlies the principle that a Sixth Amendment right to counsel exists, and is necessary to protect the fundamental right to fair legal proceedings and Due Process of law. See, e.g., Strickland v. Washington, 466 U.S. 668, 104 S.Ct.2052, 80 L.Ed.2d 674 (1984), Powell v. Alabama, 287 U.S. 45 (1932), Gideon v. Wainwright, 372 U.S. 335 (1963).

Under Strickland, a two-part showing must be accomplished prior to demonstrating that legal representation was below that required by the 6th Amendment. Strickland, 466 U.S. 668, 104 S.Ct. 2052. "First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id at 687, 2064.

In Mr. Gregory's case, the denial of counsel based on ineffective assistance existed due to multiple oversights.

## Prejudicial Error Number 2 – Failure by Trial Counsel to acknowledge obvious defects in the testimony of the State's primary witness.

In a 6th Amendment context, effective counsel is representation calculated to minimize the imbalance in the adversarial system. See, E.g., U.S. v. Ash 413 U.S. 300, 93 S.Ct. 2568 (1973). Mr. Gregory's trial counsel was lacking in the defense of his client.

The State's primary witness was the victim, Nicole Hansley. Ms. Hansley testified that there were two separate guns involved in the incident. (Trial Transcript pg. 162 [10-15]). As she testified to the circumstances that comprised the evening and that resulted in the incident giving rise to the charges against Mr. Gregory, she recounts that Mr. Gregory and Mr. Nichols seemingly used the same weapon – on occasions taking it from the other in order to effectuate the assault.

The reliance on one weapon by both "perpetrators" and their attempts to "un-jam" and to use this one weapon is antithetical to the idea that there were multiple guns as attested to by Ms. Hansley. At minimum, this issue calls into question the ability for the witness to reliably recollect the event. So too does it buttresses the claim that Ms. Hansley's escalated crack/cocaine abuse in the days and hours leading up to the incident may have profoundly impaired her ability to cogitate.

Considering that the only eye-witness to Ms. Hansley's attestation was her own self, this was an issue that should have been a variable in the jury's deliberation. The fact that it was overlooked by trial counsel demonstrates a functional lack of legal representation. Trial counsel's intimation that Ms. Hansley's memory on that evening may have been markedly impacted by her substance abuse would undoubtedly have been strengthened by supporting evidence – Ms. Hansley's own inconsistencies as to the details surrounding the assault. The failure by trial counsel to raise this particular issue was decidedly detrimental to Mr. Gregory's case and, as such, it falls below the type of advocacy contemplated by the 6th Amendment.

### Prejudicial Error Number 3 - Trial counsel denied Mr. Gregory the opportunity to take the stand and testify on his own behalf

According to the petitioner, he was prevented by his attorney from testifying on his own behalf. It is well established that an attorney must consult with his client regarding matters concerning trial strategy. See. e.g. Bradshaw v. State 806 A.2d 131, Del. Supr., 2002. Furthermore, Delaware Legal Ethics Rules provide that "in a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer as to…whether the client will testify." (DLRPC 1.2).

Here, Mr. Gregory was prevented from testifying on his own behalf. Undoubtedly the testimony would have been very significant to the outcome of the case. As well, Mr. Gregory's testimony may have been considered a strength to his case during the jury deliberations. Mr. Gregory was obliged to make that decision after consultation with his legal representation. Not being allowed to do so violated his 6th Amendment entitlement to effective legal representation.

## CONCLUSION

For the reasons stated above, I hereby request that Mr. Gregory's motion for U.S.C. 28 § 2254 post conviction relief be granted, and that the conviction and sentence in the instant matter be vacated accordingly.

Respectfully submitted,

James Q. Butler, Esq.
Attorney at Law (Bar# 490014)
Butler Law Firm
818 18th Street, 6th Floor
Washington, D.C. 20006
Telephone: (202) 223-6767
Fax: (202) 223-3039
Jamesbutleresq@butlerlawfirmdc.com

CERTIFICATE OF SERVICE

I, James Q. Butler, hereby certify that on the 12th day of November 2007, the original and one copy of the foregoing was mailed to the clerk of the court and a true copy of the foregoing was mailed, postage pre-paid to:

Delaware Attorney General's Office
Attn: Joseph R. Biden III
Carvel State Office Building
820 N. French Street
Wilmington, DE 19801

By: _____
James Q. Butler, Esq.